IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| CHANTEL SMITH, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION 15-0065-WS-B |
| | ) |
| REBECCA REAM, | ) |
| | ) |
| Defendant. | ) |

**ORDER**

This matter comes before the Court on plaintiff's filing styled "Objection to Removal" (doc. 6), which the Court construes as a Motion to Remand. The Motion has been briefed and is now ripe for disposition. Also pending is defendant's Motion to Strike (doc. 11).

**I.  Background.**

This action, which was originally filed in Dallas County Circuit Court, arises from an automobile accident that occurred on December 11, 2012 in Selma, Alabama. According to the Amended Complaint (doc. 1, Exh. C) filed in state court on January 12, 2015, defendant, Rebecca Lee Ream, recklessly pulled out in front of plaintiff, Chantel Smith, causing their vehicles to collide. The Amended Complaint alleges that the collision injured Smith and caused pre-term birth injuries to her infant son, resulting in his death. The Amended Complaint asserts causes of action against Ream on theories of wantonness/ negligence, wrongful death, and emotional distress.

The Amended Complaint also named a second defendant, Alfa Mutual General Insurance Company, alleged to be Smith's uninsured motorist carrier at the time of the accident. Alfa's involvement in the case was fleeting. On February 2, 2015, Smith and Alfa filed a Joint Stipulation of Dismissal (doc. 1, Exh. E), wherein they agreed to the dismissal without prejudice of Smith's claims against Alfa. Dallas County Circuit Judge Collins Pettaway, Jr., entered a *Pro Tanto* Dismissal Order on February 3, 2015, dismissing Alfa as a party defendant. (*See* doc. 1, Exh. F.) Consequently, Ream is now the sole remaining defendant.

Three days after Alfa's dismissal, Ream filed a Notice of Removal (doc. 1), removing this action to federal court. Ream explained in the Notice that federal subject matter jurisdiction was proper pursuant to the diversity provisions of 28 U.S.C. § 1332. With respect to the diversity of citizenship requirement, defendant noted that Smith is an Alabama citizen (as alleged in Paragraph 1 of the Amended Complaint) and made a substantial, uncontested showing that Ream is a Colorado citizen.[1] As to the amount in controversy requirement, defendant pointed to the Amended Complaint, in which Smith demanded $10 million in damages. Specifically, in her "Second Cause of Action" (negligence / wantonness), plaintiff "demands judgment against Defendants, in the sum of Three Million Dollars ($3,000,000.00) in damages." (Doc. 1, Exh. C, at 4.) In her Third Cause of Action (wrongful death), plaintiff "demands judgment against Defendants, [in] the amount of Three Million Dollars ($3,000,000.00) in damages." (*Id.* at 5.) In her Fourth Cause of Action (mental anguish / emotional distress),[2] plaintiff "demands judgment against Defendant, [in] the amount of Four Million Dollars ($4,000,000.00) in damages." (*Id.* at 6.) In the *ad damnum* clause at the end of her Amended Complaint, Smith "requests this Honorable Court to enter a judgment against the Defendant in a sum of Ten Million Dollars ($10,000,000.00), including an amount for punitive damages." (*Id.*)

---

[1] The Amended Complaint pleads that Ream is an Alabama citizen. (Doc. 1, Exh. C, at ¶ 2.) However, defendant demonstrates via affidavit that Ream moved to Colorado in August 2013, has resided there continuously since that time, has filed income taxes in Colorado for 2013 and 2014, has a Colorado driver's license and hunting license, and has completed both voter registration and vehicle registration in Colorado. (Ream Aff. (doc. 1, Exh. G.) These facts sufficiently establish that Ream is a Colorado citizen for diversity purposes. *See McCormick v. Aderholt*, 293 F.3d 1254, 1257 (11th Cir. 2002) ("Citizenship is equivalent to 'domicile' for purposes of diversity jurisdiction."); *Slate v. Shell Oil Co.*, 444 F. Supp.2d 1210, 1215-16 (S.D. Ala. 2006) (explaining that "domicile" is "the place of his true, fixed, and permanent home and principal establishment, and to which he has the intention of returning whenever he is absent therefrom" and that domicile changes only upon a showing of both "(1) physical presence at the new location, and (2) intent to remain there indefinitely"). Plaintiff does not dispute the citizenship allegations as to Ream.

[2] In this Fourth Cause of Action, Smith seeks a money judgment against Ream for the "loss of companionship, pecuniary loss, mental anguish, emotional pain and suffering and other damages arising out of the death of" her child. (*Id.* at 5-6.) In observing that Smith has pleaded such a claim, the Court expresses no opinions as to its legal viability under Alabama law. *See generally Daniels v. East Alabama Paving, Inc.*, 740 So.2d 1033, 1048 (Ala. 1999) ("Ordinarily, in a wrongful-death action, mental suffering of family members is not compensable.").

Plaintiff, by and through counsel of record, now objects to removal and seeks remand of this action to state court on the ground that Ream has not met her burden of showing that the amount in controversy exceeds the jurisdictional minimum of $75,000.  (*See* doc. 6.)

II.     **Analysis.**

   *A.     Legal Standard for Motion to Remand.*

A removing defendant must establish the propriety of removal under 28 U.S.C. § 1441 and, therefore, must demonstrate the existence of federal jurisdiction.  *See Friedman v. New York Life Ins. Co.*, 410 F.3d 1350, 1353 (11th Cir. 2005) ("[i]n removal cases, the burden is on the party who sought removal to demonstrate that federal jurisdiction exists") (citation omitted); *Sammie Bonner Const. Co. v. Western Star Trucks Sales, Inc.*, 330 F.3d 1308, 1310 (11th Cir. 2003) ("Because Western Star sought removal to federal court, it bore the burden of proving that Bonner's claims satisfied the minimum amount in controversy requirement.").  Because removal infringes upon state sovereignty and implicates central concepts of federalism, removal statutes must be construed narrowly, with all doubts resolved in favor of remand.  *See University of South Alabama v. American Tobacco Co.*, 168 F.3d 405, 411 (11th Cir. 1999) (explaining that strict construction of removal statutes derives from "significant federalism concerns" raised by removal jurisdiction).

There being no federal question presented in the Amended Complaint, Ream's Notice of Removal hinges on diversity of citizenship.  Under 28 U.S.C. § 1332(a), federal courts have original jurisdiction over all civil actions between citizens of different states where the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.  *See Underwriters at Lloyd's, London v. Osting-Schwinn*, 613 F.3d 1079, 1085 (11th Cir. 2010) ("For federal diversity jurisdiction to attach, all parties must be completely diverse … and the amount in controversy must exceed $75,000.") (citations omitted).  "In light of the federalism and separation of powers concerns implicated by diversity jurisdiction, federal courts are obligated to strictly construe the statutory grant of diversity jurisdiction … [and] to scrupulously confine their own jurisdiction to the precise limits which the statute has defined." *Morrison v. Allstate Indem. Co.*, 228 F.3d 1255, 1268 (11th Cir. 2000) (citations omitted); *see also Osting-Schwinn*, 613 F.3d at 1086 (similar).

### B.      *The Amount in Controversy.*

As noted, the sole issue presented in Smith's Motion to Remand is that removal was legally deficient because Ream has not established that the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

Circuit law clarifies that a removing defendant "is not required to prove the amount in controversy beyond all doubt or to banish all uncertainty about it." *Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 754 (11th Cir. 2010). Rather, the defendant may meet its burden by showing either that it is "facially apparent from the pleading itself that the amount in controversy exceeds the jurisdictional minimum," or that there is "additional evidence demonstrating that removal is proper." *Roe v. Michelin North America, Inc.*, 613 F.3d 1058, 1061 (11th Cir. 2010) (citations omitted). What the defendant may not do, however, is rely exclusively on "conjecture, speculation, or star gazing" to show the requisite amount in controversy. *Pretka*, 608 F.3d at 754.

Ream's position, quite simply, is that it is facially apparent from the Amended Complaint that the amount in controversy exceeds $75,000. After all, defendant reasons, the Amended Complaint demands $3 million in damages as to the negligence/wantonness cause of action, another $3 million as to the wrongful death cause of action, and $4 million as to the mental anguish cause of action. In total, the Amended Complaint specifies that Smith seeks "a judgment against the Defendant in a sum of Ten Million Dollars ($10,000,000.00), including an amount for punitive damages." (Doc. 1, Exh. C, at 6.) The relevant removal statute provides, subject to certain exceptions not present here, that "the sum demanded in good faith in the initial pleading shall be deemed to be the amount in controversy." 28 U.S.C. § 1446(c)(2); *see also Dart Cherokee Basin Operating Co., LLC v. Owens*, --- U.S. ----, 135 S.Ct. 547, 553, 190 L.Ed.2d 495 (2014) ("When a plaintiff invokes federal-court jurisdiction, the plaintiff's amount-in-controversy allegation is accepted if made in good faith."); *Perez v. Cellco Partnership*, 2014 WL 2215745, *2 (M.D. Fla. May 28, 2014) ("For all cases filed after January 6, 2012, the recently amended 28 U.S.C. § 1446(c)(2) controls when the complaint makes a monetary demand."). Given the $10 million demand in the Amended Complaint and the plain language of § 1446(c)(2), Ream has satisfied the amount-in-controversy threshold for removal jurisdiction by a wide margin.

In objecting that the § 1332 jurisdictional threshold is not met, Smith advances three arguments, none of which have merit. First, Smith insists that Ream has failed to meet her burden of establishing the amount in controversy because "the maximum recovery is determined by the Defendant's automobile insurance policy limits" (doc. 6, at 2), and Ream has not disclosed those limits.[3] The notion that Smith's recovery is restricted to Ream's policy limits is devoid of factual or legal support. This case not a direct action against Ream's insurance carrier. No such insurer is a named defendant herein; rather, Smith has filed suit against Ream herself. The Amended Complaint does not purport to peg Smith's damages to Ream's liability insurance policy limits. Moreover, no legal principle would automatically cap a tortfeasor's liability at the amount of her insurance policy limits; to the contrary, tortfeasors are routinely sued for amounts in excess of those policy limits and are held personally liable for the difference.[4] Had Smith wished to sue Ream for only the limits of her insurance coverage, she could have framed the *ad damnum* clause of the Amended Complaint in those terms. She did not. As pleaded, the policy limits of Ream's insurance coverage have no bearing on the amount in controversy at the time of removal.

---

[3]   Smith repeats this same assertion in her Reply, to-wit: "[T]he Plaintiff can only recover the amount of the limit stated in the Defendant's automobile insurance policy." (Doc. 10, at 2.) Once again, plaintiff offers neither legal authority nor reasoning to support such a facially inaccurate proposition.

[4]   Plaintiff's reliance on *Allstate Indem. Co. v. Reed*, 2012 WL 663975, *1 (S.D. Ala. Feb. 29, 2012), and *Payne v. State Farm Mut. Auto. Ins. Co.*, 266 F.2d 63, 65 (5th Cir. 1959), is misplaced. To be sure, the *Reed* opinion noted that, regardless of the amount of damages claimed, the jurisdictional amount in controversy was not satisfied where "the most an insured can recover under the policy" is a figure below $75,0000. *Reed*, 2012 WL 663975, at *1. Similarly, the *Payne* panel reasoned that in a direct action against an insurance company, regardless of the sum claimed as damages, "the amount in controversy was the value of the policy and not the amount claimed in good faith by the plaintiff." *Payne*, 266 F.2d at 65. Both cases are obviously distinguishable from this action; indeed, *Reed* was a coverage dispute between insurer and insured, while *Payne* was a direct action brought by a third party against the insurer itself. By contrast, the case at bar involves wrongful death claims leveled solely against the alleged tortfeasor. No insurer is a named party; therefore, insurance coverage limits define neither the upper bounds of defendant's liability nor the maximum amount of plaintiff's claim. Simply put, unlike in *Reed* and *Payne*, the policy limits of Ream's insurance coverage are not pertinent to the jurisdictional inquiry in this action, as pleaded by Smith in the Amended Complaint.

Second, Smith endeavors to circumvent the debilitating effect of § 1446(c)(2) on her efforts to return to the state forum.  Again, for purposes of removal jurisdiction, "the sum demanded in good faith in the initial pleading shall be deemed to be the amount in controversy." 28 U.S.C. § 1446(c)(2).  Smith's rejoinder is that the $10 million figure demanded in the Amended Complaint "is not indicative of the value of the case ***nor was the request made in good faith***."  (Doc. 6, at 3 (emphasis added).)  It is unorthodox, to put it mildly, for a party to urge a court to discount her own pleading as having not been prepared in good faith.  Such an admission may implicate Rule 11 and ethical concerns.  More to the point, Smith's argument misapplies the term "good faith" as it is used in § 1446(c)(2).  Smith posits that she included a $10 million demand in the Amended Complaint as a mere placeholder because she was unaware of Ream's insurance coverage limits, and she intended to amend the complaint to conform to those policy limits upon disclosure of same.  (Doc. 6, at 3.)  By contrast, the "good faith" constraint in § 1446(c)(2) is targeted at manipulative pleading by a plaintiff for the purpose of avoiding federal jurisdiction.  *See, e.g., Perez*, 2014 WL 2215745, at *2-3 (complaint listing amount in controversy being less than $75,000 was not made in good faith for § 1446(c)(2) purposes where plaintiff in discovery claimed more than $328,000 in damages); *Garcia v. Geovera Specialty Ins. Co.*, 2013 WL 1967799, *1-2 (S.D. Tex. May 10, 2013) (describing as § 1446(c)(2) bad faith a situation in which plaintiffs "plead for damages below the jurisdictional amount in state court with the knowledge that the claim is actually worth more, but also with the knowledge that they may be able to avoid federal jurisdiction by virtue of the pleading").  Whatever else may be said about Smith's $10 million demand in the Amended Complaint, its purpose was obviously not the manipulation of the amount in controversy to evade federal jurisdiction.  Accordingly, the Court concludes that there has been no showing of bad faith for purposes of 28 U.S.C. § 1446(c)(2).  By the terms of that statute, the amount in controversy in this action is $10 million, far in excess of the $75,000 jurisdictional threshold.

Third, in her Reply Brief, Smith changes gears by attaching as an exhibit a copy of the Second Amended Complaint she purported to file in Dallas County Circuit Court on March 3, 2015, some 25 days <u>after</u> Ream removed the action to federal court.  In this "Second Amended Complaint" (which she has never filed as a freestanding pleading in this District Court), Smith purports to make various modifications to her pleading, including most notably deletion of all references to specific monetary amounts.  Smith would recast her claims as being for

indeterminate damages by demanding judgment "in a sum this court deems appropriate." (Doc. 10, Exh. A, at 4-5.) Of course, "[j]urisdictional facts are assessed on the basis of plaintiff's complaint *as of the time of removal*." *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1097 n.13 (11th Cir. 1994); *see also Dudley v. Eli Lilly and Co.*, 778 F.3d 909, 913 (11th Cir. 2014) ("We also underscore that jurisdictional facts are evaluated as they stand at the time of removal."); *Leonard v. Enterprise Rent a Car*, 279 F.3d 967, 972 (11th Cir. 2002) ("we note that for purposes of this challenge … the critical time is the date of removal …. If jurisdiction was proper at that date, subsequent events, even the loss of the required amount in controversy, will not operate to divest the court of jurisdiction."); *Nelson v. Whirlpool Corp.*, 727 F. Supp.2d 1294, 1301 (S.D. Ala. 2010) (as a general proposition, courts are prohibited "from relying on post-removal events in examining subject matter jurisdiction") (citation omitted). Thus, any post-removal attempt by Smith to amend her pleadings to alter the amount in controversy is jurisdictionally irrelevant.[5]

## III.  Conclusion.

For the foregoing reasons, plaintiff's Motion to Remand (doc. 6) and the Motion to Strike (doc. 11) are **denied**. The parties are reminded that their Rule 26(f) Report is due on or before March 30, 2015. (*See* doc. 5.)

DONE and ORDERED this 24th day of March, 2015.

s/ WILLIAM H. STEELE<br>CHIEF UNITED STATES DISTRICT JUDGE

---

[5]  In a Motion to Strike (doc. 11), Ream asks that the Second Amended Complaint be stricken because, among other defects, Smith neither obtained leave of court nor otherwise complied with Rule 15, Fed.R.Civ.P., in filing that amendment. The Motion to Strike is **denied**. Smith has not endeavored to file the Second Amended Complaint as a freestanding pleading in this District Court; rather, she filed it in state court on March 3, 2015, then attached it to her reply brief as an exhibit. Post-removal filings in state court have no effect on the operative pleadings in a removal action. Unless and until Smith files the Second Amended Complaint as a freestanding pleading in this District Court (after complying with Rule 15, of course), it is legally inoperative and inapplicable. Smith's current pleading in this District Court is the First Amended Complaint. Again, Smith submitted this "Second Amended Complaint" to federal court solely as an exhibit to a brief. The Court has considered that exhibit in weighing the parties' various arguments pertaining to the Motion to Remand. It would serve no constructive purpose to strike such exhibit as Ream has requested, on the grounds that, hypothetically speaking, it would have been improper for Smith to file this exhibit as an amended pleading in federal court (which, to date, she has not done).